May it please the court. The Fair Labor Standards Act authorizes employers to take a tip credit for tipped employees. A tipped employee is defined in Section 3T of the statute as any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips. In this case, the Department of Labor issued a final rule purporting to interpret that language but deviating entirely from the statute. The statutory term, the definition of tipped employee, focuses on the occupation. What the Department of Labor's regulation did instead was to make pursuit of tips the sole function, the core function of any occupation for which an employer can take a tip credit. Are you not challenging the 1967 dual jobs regulation? Are you? The regulation itself? Yeah, I know we've had, there was a lot of discussion about Judge Acuda's opinion and that sort of thing. I'm just trying to make sure that it's not that regulation that you're challenging. We're challenging the 2021 final rule, you're right. So while it might be inconsistent with the 1967 dual jobs regulation, if you're not trying to say that itself was a venture beyond, do you need that for you to win? No. The 1967 regulation, frankly, is mostly fine. There are steps, there are aspects of the 67 regulation that probably go beyond what the department is allowed to do, at least with respect to circumstances where an employee is engaged in more than one occupation within the same work week. But I think that's a relatively minor aspect of the 67 regulation. I think the 67 regulation is mostly fine. It's what happened after the 67 regulation that really deviates from the Fair Labor Standards Act. Beginning in 1979 with the department's opinion letter, the first opinion letter applying the dual jobs framework from the 67 regulation to a single job, what had traditionally been known as a single occupation. Okay. Then that gives me this follow-up question. If we held, assuming argument of not foreshadowing, that the final rule was unlawful, does that mean that the DOL's guidance documents since 1967 interpreting the dual jobs regulation were also unlawful? And do we need to reach that? Your Honor, we would not need to reach that. But I think that depending on how the court ruled, it could impact the sub-regulatory guidance that the department has issued since the 1967 dual jobs regulation, including the field operations handbook from 1988, including the opinion letters from 85 and 80 and 79. I have a question about the remedy, again, not foreshadowing. What is the exact remedy that you are seeking? You know, we talk about injunctive relief, but there's the APA claim, which is in a footnote, and wouldn't vacature be the remedy if the APA vacature would be the proper remedy under our circuit's precedent? So I'm wondering, what remedy are you seeking, and have you consistently argued? Right. Yes. In the complaint, we seek to have the 2021 rule vacated in the summary judgment motion. We seek to have the rule declared invalid and vacated. We also seek an injunction. But those kind of go together. If the rule is vacated, then there's not even necessarily a need to. You know, the court has been, the big court, has had some things to say about injunctions. Different members of the court, and we have great respect for the court, obviously, and try to follow its pronouncements. And so, are you saying that we have to do an injunction here? Honestly, no. If the rule is vacated, then there's nothing that needs to be enjoined. Perhaps on the periphery of that, there might be concern about the department proceeding with enforcement action consistent with its prior sub-regulatory pronouncements. So to the extent that the department were taking actions inconsistent with the vacature of the 2021 rule, that could be an issue, maybe that's speculative and down the road. Are you insisting that we go to Chevron step zero if you have the same thing in the Chevron step two? It's not for me to insist. I think that under step zero and step two, especially, that the regulation is invalid. Do we have to wait because of Chevron's precarious stature at this time? I think we have something that says we must name it under Voldemort and all of that. I was not anticipating a Harry Potter reference today. Well, no. That was in the case that we had about Chevron. I'm sorry. No. I think that one issue in this case, for example, is whether the government has even waived the Chevron argument. They don't mention Chevron or argue the Chevron structure in their brief. This court has recently held that where the government does not rely on Chevron, that the Chevron aspect of it is waived. This case isn't even necessarily a Chevron case. What if it's an Auer case? If it's an Auer case, then I think we would still win under Auer against Robbins and under Kaiser against Wilkie because we still come back to the statute. This is fundamentally about the words that Congress put in the statute and whether the department's final rule fits that statute or not. I have one more administrative law question, and then maybe you have . . . my colleagues may have questions about the actual merits of the case. If the court . . . if the department did not use the O-net designation, or I'm not sure if that's what you call it, but that in itself would not ordinarily be enough to reverse this, would it? No, of course not. We're not suggesting in our case that O-net was the controlling facts as a matter of law or that it somehow bound the department to follow that specific source of information. It was part of the broader argument that appears in our Chevron Step 2 argument where we note the irrationality of what the department did, that there is information out there about what tasks, what activities are customary and normal for these types of occupations, for bartenders, for waiters, for waitresses, and a whole host of other occupations as well. The department not only ignored, even though it regards O-net as authoritative, but went beyond that and instead created a regulatory construct that ignores the job duties other than pursuit of tips. The sole touchdown, the north star for the government's final rule is actively pursuing tips. So does the tipped employee designation, is that dependent entirely on the job title? Not the title. It depends on the occupation. And that's different necessarily. It doesn't have to track the title. And that's why in the brief, in our brief, we acknowledge that there is room for the department to put some meat on the bones in terms of figuring out whether someone is actually engaged in an occupation versus the employer simply says, well, you're a server, but we're going to have you carrying out all the duties of being a dishwasher all day. So the department can deal with that, and there are plenty of regulatory tools already in existence to deal with that. For example, the primary duty analysis under the FLSA's executive, administrative, and professional exemption regulations. They could look at quantity of time in terms of how did you spend most of your time. There are lots of permissible ways that the department could have looked at whether someone is engaged in an occupation. What the department cannot do is say that the occupation is pursuing tips. No one has ever used the word that way. We couldn't find any instance where Congress or any dictionary had ever used defined occupation to be this one narrow aspect of tasks as opposed to the whole cluster of activities that go with pursuing work in a particular field. It isn't another way to say that that's simpler and consonant with the statutory language that you're in an occupation, and the statute says the difference maker is whether it produces $30 or more tips per week, per month, I'm sorry, per month, and it doesn't say anything about the metrics of job activities that are tip producing. It just has the total amount of tips, and the occupation might not matter at all. Well, that's correct, Your Honor. I think that one of the ways to kind of frame this is to think about taking a step back from the minutia of the regulation and go back to the statute and think about why we have the tip credit and the purpose that it serves in the context of the FLSA. Congress in enacting the tip credit in 1966 was not trying to make the Department of Labor the HR department for all the businesses in all of these industries defining tasks and time. It wasn't about that. It was about just making sure that people who were tipped employees were no worse off than people who were not tipped employees with respect to minimum wage. That's it. Making sure that they were getting at least $7.25 an hour. Somebody who's not a tipped employee under the FLSA is entitled to at least $7.25 an hour, and that's all that the FLSA says. When we're talking about a tipped employee, they're simply ensuring that there's at least parity so that the tipped employee is no worse off. The tip credit recognizes as part of a legislative compromise in first applying the FLSA's minimum wage to tipped industries in 1966 that there was this unique history in these industries of employees who have two streams of income, tips and cash wages, as opposed to employees in other industries who just get their wages directly from the employer. So this was a combination of the fact that for the first time in the 28 years at that time, in 1966, that these workers in these industries were going to be subject to the minimum wage. And this was a way of recognizing that it wasn't fair or appropriate to tell employers you have to pay the full cash minimum wage to these workers who also have at that point substantially or all of their earnings coming from tips. But then almost immediately, the department comes up with the dual jobs regulation, and you're saying you're not challenging the dual jobs regulation in order to challenge the final rule, but doesn't the acceptance of the dual jobs regulation put you on a slippery slope to the final rule? No, it does not, Your Honor. The 67 dual jobs regulation is, as I've said before, mostly fine, insofar as if you had in an entire work week, in one week if the employee does kitchen work, and in the next week the employee does entirely working as a bartender or working as a waiter or waitress. There's nothing wrong with that dual jobs framework where the status in one work week would be you're a tipped employee, and in another work week you're not. There's nothing wrong with that. It does get more complicated when those activities are happening in the same work week. That's where the 1974 legislative history comes into play, which did not modify this aspect of the statutory language, but did add a separate reference to tipped employees. And in 1974, Congress was saying that in a situation where an employee works in more than one occupation in the course of a week, you judge the employee's status as a tipped employee based on the totality of what goes on in the work week. So isn't that the confusion that in the 1967 regulation, it was talking about very different jobs, that it wasn't talking about wiping off the menus or filling the salt shakers or something that doesn't generate tips that is within the same wheelhouse. It really meant dual, like you're cutting meat in the back or you're doing maintenance work on the air conditioning units and things. I mean, it's something very different, not something that is a filler duty in waitressing, didn't it? That's absolutely right. If we think about what the problem that the dual jobs regulation was trying to tackle, it was if you have two or more occupations that the employee has with the same employer, if you picture a Venn diagram with non-overlapping duties sets for those two jobs versus what the department did here, which is one occupation, one job, various duties within those jobs that also might be shared by other occupations as well, preparing foods, also a job of cooks. If somebody did just preparing foods for the entirety of their working time, they're probably not going to be a tipped employee. But if that's one aspect of what they do as part of their tipped work as a server, as a bartender, then that's an entirely different analysis and that's where things took a wrong turn in the department's application of the dual jobs framework is when it tried to apply this dual jobs concept, meaning two separate jobs, to a single job and to slice and dice the duties and parse the duties of a single occupation into multiple jobs. And they had to do that in the 2021 final rule by really making, instead of the occupation, the touchstone, they made the tips the touchstone. And that's where it went wrong. That's where the regulation bears no resemblance to the statute. It's an entirely different governing concept based on are you directly, immediately, actively pursuing tips for 80% of your time or more. There's nothing in the FLSA that gives the Department of Labor the authority to draw those lines. The department does have the authority to try to figure out, is somebody engaged in an occupation? What do you do if your business is slow and it's going to get to 30 minutes of cleaning the menus or something before the next customers come in? You can't, can you do split shifts or something? Probably not. So, if you have to pay the worker at the minimum wage, then what happens for that time? I don't understand how it could say that if the business is slow, then that, I thought the issue was whether you were making 30 bucks or not. And if you are making the $30, then you get the tipped employee rate. Correct. So, help me with that. You're facing the same challenges with the regulation that we are. It's not a workable regulation. What about the unfairness to the worker, that we have gotten an amicus brief that says that the workers are not being treated fairly and that they're being asked to do all sorts of things that they shouldn't be asked to do and they can't make enough tips? If they don't make enough tips, the FLSA has a self-correcting mechanism because if the or to minimum wage for any given work week, the employer has to top up those tips. That's part and parcel of the tip credit provision. It used to be $20? It used to be $20. And then it became $30? Yes. So, that could be raised to $40 or something, if that was the concern. Yes, Your Honor. I see that my time has expired. I'll reserve the rest of my time. Thank you. Thank you. I'm sorry. I have a question. Good morning, Your Honors. Jennifer Utrecht on behalf of the Department of Labor. Your Honors, the restaurant industry here asked this Court to adopt an interpretation of the FLSA that is contrary to nearly four decades of practice and the decisions of numerous courts of appeals. Counsel, I'm going to ask you to, I've got a southern ear. I'm sorry. Slow down. Absolutely, Your Honor. If I speak too fast, please feel free to correct me again. I'll try to slow down. Plaintiffs aren't shy about what they're asking this Court to do. I've heard an argument today. The plaintiffs suggest that if this Court were to adopt their interpretation of the FLSA, it would call into question portions of the 1967 dual jobs regulation. I've heard them say that they think that the guidance that has been upheld by multiple courts of appeals was unlawful. I mean, they are asking this Court to deviate from many decisions and many years of practice. And a simple hypothetical— Could we rule for them without touching the 1967 guidance or dealing with any of the interim guidance? They said we could. I don't think that if this Court could. If you adopt this—well, first of all, maybe I could take a step back and explain sort of what I have heard plaintiffs' position to be here today and why that might implicate—or why that would implicate the decisions of other courts of appeals and the sub-regulatory guidance. Plaintiffs here have suggested that if a hypothetical employee engages in tip-producing work or has an occupation that plaintiffs think is an occupation that customarily regularly receives tips, that non-tip tasks can be done for an indefinite period of time and still be paid less than the full minimum wage. As long as you're getting the $30 a month. So that is what plaintiffs have said. And respectfully, Your Honor, my next point as to why that would conflict with the decisions of other courts of appeals is, first, that's not what the statute says, and that was recognized by the Eighth Circuit in the FAST decision. The statute does not say a tipped employee is defined as any employee who receives $30 in tips a month. The statute says a tipped employee is any employee who is engaged in an occupation that customarily and regularly receives more than $30 a month in tips. The engaged in language is doing work there, so we have to know when is that employee engaged in the relevant occupation and when are they not. That is fundamentally a line-drawing problem, and I think plaintiffs have conceded that's fundamentally a line-drawing problem, that the Department can define what counts as being part of that occupation and what doesn't. They just disagree with how we've done it. I don't really see that as a statutory problem. I see that as an arbitrary and capricious line-drawing problem. But fundamentally, the $30— But the work that that engaged in phrase is doing is defining the occupation that the tipped credit applies to, right? So the occupation that the tipped credit applies to has to be an occupation that customarily and regularly receives $30 in tips a month. That's all the statute says. That is all the statute says, Your Honor. That's correct, but what plaintiffs have essentially asked this Court to do is to say that the Department must list out professions that count and that everything that—I actually haven't really heard them articulate what should be in or out, other than to suggest perhaps every single task that's done by certain occupations must count, and that's clearly not what the statute requires. That's a question, again—they're agreeing that this is fundamentally a line-drawing problem, and nothing in the statute mandates their approach. In fact, the Department explained at length why it preferred this functional test, where you're looking primarily to, are you engaged in work that produced tips? I mean, that's—honestly, Your Honors, that's a common-sense interpretation of the statute. If the statute cares about when you're engaged in an occupation that customarily and regularly receives tips, then of course it matters if you're doing tip-producing work. And I think a hypothetical illustrates this point, Your Honor. So, as I understand it, plaintiff's position is essentially, if a person is a waiter one day a week and then the rest of the week they perform non-tip-producing work that is related to the profession of a waiter—I don't know how they would define that, but that's what I understand their position to be—that they—that person can be paid the reduced minimum wage the entire week, so long as they received enough tips on the first day. That can't be what Congress intended. I mean, there are a number of provisions in Section 203 that make clear that employers cannot keep employees' tips, that the tips are for the employee and not the employer. And more fundamentally, the other four days of the week, the work, the non-tip-producing work that that waiter is performing is work that can be done by anyone else. So if the waiter is washing dishes for Tuesday, Thursday, Friday, I don't think anyone would say that that's part of being a waiter, and I don't think that if you had a dishwasher do those same things, you would say that person was engaged in an occupation that customarily and regularly receives tips. So that just shows the very common-sense notion reflected in the rule that what matters under the statute is whether you are actually doing tip-producing work. We have a substantial tolerance for non-tip-producing work that's related. You know, there's a 20 percent tolerance throughout the work week for work that supports tip-producing work that can be claimed as a reduced minimum wage, but beyond that, the regulation suggests, and I think this is common sense, if you're doing a lot of work, it's not merely incidental to your tip-producing work. If you're doing a substantial portion of non-tip-producing work, you're not actually engaged in the occupation that Congress cared about, the occupation that customarily receives tips. You're prepared to agree that it could just be a line-drawing, arbitrary, capricious problem? So I understand, as I understand Plaintiff's argument, this is really not, we really aren't fighting on the statute. Let me ask my question this way. Yeah. Let's assume it is an arbitrary and capricious problem. Why isn't this rule under Chevron Step 2, why isn't it arbitrary and capricious? So it's not arbitrary and capricious, Your Honor, because the statute contemplates that there will be a functional test for figuring out when someone is engaged in an occupation that customarily and regularly receives tips, and the department's rule reflects that. When you're principally, it makes sense to say, if you are doing work that produces tips, you are engaged in the relevant occupation. We've also included a substantial tolerance for non-tip-producing work that's related and directly supports the tip-producing work. But it makes sense to say, if what most of your doing in the day or most of what you're doing in an hour has nothing to do with tip-producing work, you're not actually engaged in an occupation that regularly and customarily receives tips because you're doing work that, by definition, never can produce tips. No, but I mean, I guess my problem is out of that statute grew a rule that had to do with somebody engaging in two occupations, one non-tipped and one tipped. That's kind of the rule that grew out of the statute. Now you're talking about something completely different from that. I don't think that we're talking about something completely different at all, Your Honor. I think everyone agrees here that if you're doing tip-producing work, you are engaged in an occupation that customarily and regularly receives tips. Everyone agrees that some non-tip-producing work can be part of that occupation. The question is, at what point do you cross that line? At what point have you really stopped doing the work of a tipped occupation and started doing some other job? And plaintiffs have suggested that there are certain tasks, although they have not defined them, that are so intrinsically tied up in tipped work that we should always consider them part of the job. And one of the examples, I think, that was discussed earlier was idle time. And I don't think that that's a reasonable position to take because any occupation can have idle time. If a manager at a restaurant were engaged in idle time, no one would say that they were engaged in the work of a waiter. If a hostess or a, you know, a receptionist at a nail salon were engaged in idle time, we would not say that they were doing the work of a tipped profession. So that isn't so uniquely tied up. What do you say they're doing during idle time under this new rule? So what they're doing under idle time is non-tip producing work that directly supports work. It's no work at all. Sorry? It's no work at all. I suppose that's true, Your Honor, but what matters is that it's not tip producing work. And so it's not so tied up, so uniquely and intrinsically tied up in what it means to be engaged in an occupation that produces tips that, you know, if someone were to do it all the time, we would say that they were engaged in that occupation. So if I'm, you know, by contrast, and I think this is helpful to illustrate the point I'm trying to make, if a manager or a dishwasher were to wait tables for a few hours a week, we would agree that those individuals, despite their, you know, job title, were engaged in an occupation that regularly and customarily receives tips. And that just illustrates the common sense point that what matters under the statute is if you're doing tip producing work and we'll give you a tolerance and we'll let you pay a minimum wage for some non-tip producing work, but only up to a point because a job title can't be what matters. We have to actually look to whether you are engaged in the kind of work that Congress cared about, the occupation that Congress cared about. You know, you don't cite Chevron at all in your brief, which is very puzzling since we're talking about Chevron Step 2 right now. And the district court held that the statutory provision is ambiguous under Chevron Step 1. So, but then you didn't, or do you think it's ambiguous? And why didn't you talk about Chevron if that's how you won in the district court? What's happening? I don't think that we need Chevron to, for this court to affirm. How do you think you win? And so, as I, as I mentioned, Your Honor, I just don't view this really as a question of statutory interpretation. This is a question, everyone seems to agree here that the department can draw limits. The question is whether the limits that were drawn were arbitrary, not necessarily whether they. I don't think everyone agrees that they can draw limits that are different than what the statute says. The statute talks about tipped employees and those are people who get more than $30 a month in the tips. Again, Your Honor, that's not what the statute says. It doesn't? What does it say? It says that a tipped employee is an employee that is engaged in an occupation that customarily receives tips. And all of those words there have to have some meaning. The, the, what Your Honor just said is that anyone who receives $30 in tips can get paid the reduced minimum wage for all the work that they do. And that takes out the words engaged in, it takes out the occupation, it takes out It's not a single thing that's truly a different job that's something like being a maintenance man or something, or woman, under the regulation in 1967, if it's still valid. So, that, so there is an allowance made for when it's a totally different job under long-standing practice. But anyway, so you do not want to win on its ambiguous, like the district court gave you? So two points, Your Honor. First, as to the 1967 dual jobs regulation, as I, as I understand Your Honor's question, it is, you know, sorry, that there are circumstances in which someone is engaged in an entirely different job and everyone agrees that should not count. So what that means is, there has to be a line that is drawn that defines when you are acting in a different job and when you are not. And if, if Your Honor is suggesting that the statute says there has to be a line, and that, that, and that authority was expressly given to the Department of Labor to implement these provisions, then of course, authority is expressly given to the Department of Labor to decide where that line is. As to whether deference is necessary, I, I, because I think we are agreeing that there has to be a line drawn, it then becomes an APA challenge about whether the line we've drawn is arbitrary and capricious, that I don't understand that to be a Chevron question, but of course, you know. I don't understand that to be just an APA question or what, what, what are we not, are we doing an hour, what, what, what test are we applying? So, so under the arbitrary, sorry, under the Administrative Procedure Act, of course, you know, regulations can be found to be arbitrary and capricious, that is a separate test. Separate test entirely. That's correct. So we're not doing Chevron under statutory interpretation, we're not doing hour under the APA. That. Is that what you're saying? It's happening? Because, because I don't believe that there is a dispute about whether the statute permits there to be lines drawn, that is, I think, what the appropriate doctrinal analysis is. If this Court. If this Court doesn't do that. If this Court does think there is a dispute about what the statute permits, then, you know, the, the appropriate analysis would be either, either some version of Chevron or Skidmore, in which case, of course, the Department's, for all the reasons that I don't think it's arbitrary and capricious under the Administrative Procedure Act, it would not be arbitrary and capricious under those deference tests. What about the vacature versus injunction? So Your Honor, I suppose it would depend on what this Court's reasoning were in the hypothetical where you ruled against us. If we were to agree with, with your analysis that it's an APA arbitrary and capricious issue. If you were to agree with that, depending on what this Court said. Hypothetical. No, I understand. And I'm, obviously, there are many ways in which courts can rule in, in any case. You know, depending on what the reasoning is, it's often the case that vacater with remand for either the agency to explain its reasoning or, you know, to correct whatever the problem was that this Court identified is, is an appropriate remedy. I don't think vacater without that opportunity would it be appropriate, particularly not where as here, you know, that would be broader relief than necessary to give these plaintiffs the, you know, complete relief under the step that they have requested or their, their injuries. So right. So again, I, I can't, returning briefly to the merits, Your Honor. I really struggle to understand exactly what plaintiffs think the statute requires. My, partially because of the absurd consequences that would be produced, which is something that was recognized by the Eleventh Circuit in Rafferty when it applied an 80-20 rule to the private litigants' claims, despite the fact that the guidance, the prior guidance was no longer in effect at that time. But the Eleventh Circuit explained that Congress could not have intended for employers to say, well, sometimes waiters are asked to do this, and so therefore, no matter how much they do it in a week, they get paid the reduced minimum wage, even though it could never produce tips. That would lead to a situation in which, you know, so long as someone had one shift as a waiter and a bunch of other shifts not doing any producing work, that that sort of, that the later work would be paid $2.13 an hour. Congress did not want to dilute tips that way. It's very clear throughout the context and structure of the statute that Congress wanted employees to keep their tips, not to be asked to perform a substantial amount of non-tip producing work and be paid . . . What happens when there's idle work, again, as Judge Graves asked you about the idle work, and I think I've mentioned the idle work also? There are no, there are no customers. So, are you saying that, what is the employer to do in, under this new rule when there are no customers? So, if there are no customers, I mean, the rule doesn't say anything about how employers should structure their business. Those are choices, those are choices that are made by employers. But they have to have somebody there in case somebody comes in who could be a wait person. And so, if there are no customers for a substantial period of time, then they have to pay the people who are there waiting around a full minimum wage. That would be true if someone who is not a waiter was standing around. It's true if it is a waiter who is standing around. And the reason for that, Your Honor, as I mentioned, although the rule recognizes that sometimes individuals are asked to do non-tip producing tasks and that we can have a tolerance for that in terms of how much you pay them, it's not so uniquely bound. It's not some, idle time is not something that is unique to tipped professions. So as to require us to always permit a reduced minimum wage to be paid for that. Because, you know, The problem with this is this idle time would have to be tracked along with the salt and pepper refilling time to the minute. Whereas, if you're having idle time in some other job where you're just catching your breath and getting up, whenever they're not tipped employees, then you're not making the employer track to the very minute the idle time. Or the salt and pepper refilling time. And that's what the problem is, is this is a new imposition to track to the very minute that the work of every wait person. So two responses to that, Your Honor. The first is that this only underscores how the plaintiff's position would conflict with the decisions of other courts of appeals. Because this very argument that it's burdensome to track employees' time is one that was raised before the 8th Circuit and the 11th Circuit in the cases that upheld the 80-20 guidance. They have a 30 minute rule in the 8th and the 11th Circuit. So, second- I thought they had an 80-20 rule. Well, as to the 30 minute rule, Your Honor, as the department explained in its regulation, that obviously does not require minute by minute tracking. Because more than 30 minutes of time is a substantial chunk of time that's easy to identify. It is easy for an employer to know whether they have assigned an employee to spend- Let's say, let's say a server is idle 5% of the time every day for 5 days. Is that now being idle 25% of their work time? So under the rule, once it has hit the 20% limit, every amount of time over that would be considered a different occupation that does not, that cannot be paid. So they could be idle just 5% a day, but then that's going to trigger this more than 20%. So you've got to, so you do have to keep up with the 5%. And then they get to 25% and now they're something else. They're not a tipped employee anymore. And that has, so two responses, Your Honor. First, that has been true since at least 1988 that if the employer exceeds the 20% threshold that they cannot pay the minimum wage any longer. That's not a new burden. And second, you know, as the rule explains, it, the plaintiffs have an overbroad understanding of what sorts of things need to be tracked. And plaintiffs have argued here that if you're, you know, all while serving tables, you're doing non-tipped work, that you have to divvy up the amount of time. And the rule has explained that that's not necessary as long- Has it always been the rule that idle time is not being a server? So, under- Now you're not, if you have plenty of idle time, you're not a server anymore. So, under, if you have plenty of idle time, just like anyone else who has idle time, you are not considered to be engaged in the work that you have been hired to do. And what matters under the statute is, are you engaged in the work that customarily and regularly receives tips? I don't, it is common sense to say that sitting around while there are no customers is not work that customarily and regularly receives tips. It might support that work. And we, we recognize that it supports that work. We recognize that up to a point- You kind of got to be there- Yeah. We recognize- When the people come in. We recognize that up to a point, of course, you know, there's a tolerance for paying someone less than the full minimum wage, paying them $2.13 an hour to be there to support their tip-producing work. It is only when that exceeds a substantial amount of time, which the rule defines at 20%, just as the prior guidance has, that it becomes a problem that we consider them to have exceeded that threshold and be engaged in a different job. And you know, I see that I'm out of time, so one final point, Your Honor. What the rule does here is it recognizes, as we've been discussing, that an employee can be engaged in two different jobs. It creates an administrable rule for figuring out when an employee is engaged in one job and when they're engaged in an occupation that does not customarily and regularly receive tips. There has to be some line. The rule makes it administrable, so there can be no doubt as to when someone has exceeded that amount. And that is not only consistent with the FLSA, it's consistent with the decisions of other courts of appeals upholding the prior guidance. And the Department provided adequate reasons for why it preferred that sort of a functional test over one that I guess what plaintiffs would prefer is listing out every possible task that could possibly count as part of an occupation, which would, you know, not be flexible enough to adapt to changing industries and changing positions. And for that reason, we ask that this Court affirm. Thank you. We have your argument. You've saved time for rebuttal. Mr. DeCamp. Thank you, Your Honor. Just briefly, we agree that the Department has the authority to draw lines defining what it means to be in an occupation, to be engaged in an occupation. They did not in this rule define occupation, nor did they define what it means to be engaged in an occupation. That is a Meade issue. That is a Chevron step zero issue. They did not regulate consistent with the alleged ambiguity in the statute. They simply didn't do it. They set forth an entirely separate test based entirely on the tipped occupation and how much time one spends pursuing tips. That's not what the statute says. That's not a line that they are permitted to draw. Second, we heard the example of the person who has the job title of waiter who comes in on the first day and does waiter tasks, but then on the next four days is washing dishes. I would submit that in that instance, you would have a situation where using a primary duty test or a how much time did you spend on this job versus that job, the courts could sort that out very easily and say that if you came in and your shift, you were stuck in the kitchen washing dishes for the entire shift, you were not doing the waiter occupation in that shift. You were a dishwasher. That's easy. That doesn't require the mental gymnastics of focusing on pursuing tips. The question is, were you a waiter? Were you serving customers or waiting for customers to come in? Were you doing the normal things that people in this occupation do or the same would hold true for a bartender or a table games dealer in a casino? Are you there for the purpose of carrying out the duties that are the hallmark of that occupation or not? That's not hard and the courts can sort that out and the department can sort it out if they drew the right lines. And then when they talk about the functional test, the functional test is really just a euphemism for a different test from what the statute says. Focusing on not the occupation, but on the time spent pursuing tips is simply the wrong test. It's the wrong standard and it's not true to the statute. If there are any further questions, happy to answer them, otherwise I'll sit down. So one question, you've indicated given the example that the department gave of four days a week doing non-tip producing work and one day a week doing tip producing work, what if that were divided, a single day was divided in half? Four hours doing a waiter work, four hours doing janitorial work, and that was true of the next four days or the next shift. Is that a dual job? That could potentially be a dual job and I think that the department could regulate in that space. So what if it were an employee doing two hours of tip producing work, two hours of janitorial work, two hours of working back in the back cutting meat, and two hours doing something else that's non-producing work, is that a dual job? It could potentially be, but I think I would frame it a little differently because the question is are they within the occupation. When you come in and you're assigned, the way this works in a workplace is you're assigned a shift, you're on the schedule as a server, you're on the schedule as a table games dealer, you're a bellman, whatever your job may be. Are you doing the tasks that are normal for that occupation or are you not? If you are stuck in the kitchen for two hours, for four hours doing stuff that is not in any sense waiter work, you're not responsible for customers during that time period, for purely in the back of the house, other people are taking care of the customers, well then you're maybe not engaged in the waiter occupation even though you- You agree that there's a little bit of slicing and dicing that is appropriate for the department to do. There is room for line drawing to the extent that you have a situation where employees are pulled away from the main duty of their occupation. I would say when we're talking about servers in a restaurant or bartenders, their main thing that they're there for is to take care of customers. If they are having an extended block of time where they are divorced from that, they are assigned tasks that have nothing to do with the customers, they are told go spend four hours in the kitchen, you have no table responsibilities, you have no customer responsibilities, well that may be a shift or a portion of a shift that is in a different occupation because at that point if you were functioning exclusively as a dishwasher and you were relieved of any duties relating to customers- Would we be creating a circuit split with the 8th and the 9th and the 11th or would it not be because it wasn't based upon this new iteration? I think it would be an indirect circuit split because it would be this regulation versus the other courts that ruled in an hour context on the sub-regulatory guidance. At the end of the day, it's the same lurking legal issue of is this approach to dual jobs consistent with the FLSA? I suspect at the end of the day there would be strong tension between a ruling here versus the rulings in the other circuits, but that's a consequence of the fact that frankly the other courts got it wrong as we set forth in our brief. But it's all pre this regulation? Correct.  It's not on this reg? Correct. Oh, I'm sorry. Thank you. Thank you. We appreciate both of your arguments, Mr. DeCamp and Ms. is it Utrecht? Utrecht. Utrecht. Yes. Utrecht. I apologize. I apologize. You missed Utrecht. Thank you. This case is submitted. We're going to take a short break.